[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By Revised Amended Petition dated August 5, 1998, the petitioner alleges that his confinement in the custody of the Commissioner of Corrections is unlawful on the basis of his claim that he was rendered ineffective assistance of counsel in his underlying criminal proceedings.
The petitioner was the defendant in criminal cases pending in the Judicial District of New Haven. On November 10, 1993, in docket number CR6-349970, the petitioner pled guilty, under the Alford Doctrine, to one count of Murder in violation of Section 53a-54(a) of the Connecticut General Statutes and was thereafter, on January 7, 1994, sentenced to thirty-five years incarceration, consecutive to the sentences imposed in docket numbers CR6-349971 and CR6-349972.
On November 10, 1993, in docket number CR6-349971, the petitioner pled guilty, under the Alford Doctrine, to Felony CT Page 14117 Murder in violation of Section 53a-54(c) of the Connecticut General Statutes and was thereafter, on January 7, 1994, sentenced to thirty-five years incarceration, consecutive to the sentences imposed in docket numbers CR6-349970 and CR6-349972.
On November 10, 1993, in docket number CR6-349972, the petitioner pled guilty, under the Alford Doctrine, to Assault in the 2nd Degree with a Firearm in violation of Section 53a-60(a) of the Connecticut General Statutes and was thereafter, on January 7, 1994, sentenced to five years incarceration, consecutive to the sentences imposed in docket numbers CR6-349970 and CR6 349971.
On November 10, 1993, in docket number CR6-351856, the petitioner pled guilty, under the Alford Doctrine, to Aiding and Abetting Manslaughter in the 1st Degree, in violation of Section 53a-55(a)(3) and 53a-8 of the Connecticut General Statutes and was thereafter, on January 7, 1994, sentenced to ten years incarceration, concurrent with the sentences imposed in docket numbers CR6-349970, CR6-349971 and CR6-349972.
The total effective sentence imposed on the petitioner on January 7, 1994 was seventy-five years incarceration. The petitioner is in the custody of the Commissioner of Corrections pursuant to the judgments entered in said docket numbers CR6-349970, CR6-349971, CR6-349972 and CR6-351856.
In the underlying criminal proceedings, the petitioner was represented by Attorney Paul Carty.
In his Revised Amended Petition, the petitioner asserts that he entered his guilty pleas based upon the representations of his attorney, Attorney Carty, concerning the strength of the State's case against the petitioner and the probable sentence that would be imposed if the petitioner persisted in his plea of not guilty and was subsequently convicted after trial. The petitioner further asserts in his Petition that the advice he received from his trial counsel was incomplete in that the petitioner was not provided with any discovery information prior to the day the pleas were entered, that he was not advised of the possibility of a defense of mental disease or defect, insanity or the possibility of manslaughter convictions instead of murder convictions. CT Page 14118
The petitioner further asserts that Attorney Carty failed to complete an adequate investigation of the facts of each case and failed to suppress statements which had been made by the petitioner in each case.
At the habeas trial, the petitioner, Michael Cox testified on direct examination that he was not certain as to how many times he met with Mr. Carty prior to entry of the pleas but he acknowledged that his lawyer did "come to see me several times before I pled". The petitioner further acknowledged that Carty had provided the petitioner with copies of the affidavits from the arrest warrants. The petitioner further acknowledged that he was advised that he faced a total of 145 years of incarceration for the charges pending against him.
The petitioner further testified that while he was not taking any medications at the time he entered his pleas, he would have this Court believe and he so testified, that he was "getting high" while he was held in the "bullpen" at the Superior Court in New Haven. On the day he entered his pleas, the petitioner claims that "got high on PCP" when he sat in the holding cell in Court with a couple of friends. Because of this he contends, he only vaguely remembers entering his pleas but does remember talking to his lawyer and being told that he would either have to "start picking" (a jury) or enter a plea.
The petitioner acknowledges that his lawyer did discuss the possibility of a mental disease or defect plea but claims that he never discussed the difference between a murder and a manslaughter conviction. The petitioner claims he was coerced into entering his pleas.
On cross examination, the petitioner acknowledged that he was asked questions during his plea canvass as to whether he was under the influence drugs, alcohol or other medications at the time he entered his pleas and he answered that he was not. The petitioner also acknowledged that the Judge who took the petitioner's pleas did advise the petitioner that he could receive up to 75 years incarceration, that he was agreeing to a maximum of 75 years incarceration and that the sentencing Judge could reduce the sentence to some degree but that by agreeing to the plea disposition, the petitioner was agreeing to the cap of 75 years. The petitioner though maintained that his understanding was that the 75 years was a "cap" on the suspended time and not a cap on the actual time to be spent incarcerated. CT Page 14119
Attorney Carty testified at the habeas trial that the petitioner told Carty, unequivocally, that he did not want to proceed to a trial. Carty further noted that he did not discuss Motions with the petitioner because all of the Motions were "time of trial motions" and there would have been no need to discuss them unless and until they were pursued.
Carty claimed that it was his recollection that during a pre-trial conference with the State's Attorney and Judge Ronan, the Judge indicated that a 50 to 60 year sentence would be more appropriate than the 75 year sentence that the State's Attorney was requesting. Carty claims that on the basis of the pre-trial conversations with the State's Attorney and Judge Ronan, Carty conveyed his expectation to the petitioner that Judge Ronan would impose a sentence of between 50 to 60 years if the petitioner entered into a plea bargain. Carty claims though that he told the petitioner that he could very well get the 75 year sentence. Carty also asserted that he made no promises or assurances to the petitioner but that it was his (Carty's) hope that the sentence would be less than 75 years. Carty maintains that the petitioner understood this and knew that the cap would be 75 years incarceration. Carty testified that he and the petitioner didn't expect a 75 year sentence but both knew it was a possibility.
Carty further testified that at the time the pleas were entered, the petitioner was lucid and appeared to fully understand what was happening — he did not appear to be under the influence of PCP or anything else. Moreover, claimed Carty, there is no ventilation in the lock-up in the New Haven Court — it is a confined area and the Sheriffs certainly would have known if anyone was smoking anything in the lock-up at the time the petitioner claims that he and his friends were smoking PCP.
Carty maintains that he absolutely did not force or coerce the petitioner to plead guilty and maintains further that the petitioner did not want to go to trial in any case.
The law in Connecticut with respect to petition for writs of habeas corpus based upon a claim of ineffective assistance of counsel is fairly well settled. A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. Stricklandv. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. CT Page 14120 denied 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). This right arises under the sixth and fourteenth amendments to the United States Constitution and article first § 8 of the Connecticut Constitution. Baez v. Commissioner of Corrections,34 Conn. App. 236, 242-43, cert. denied, 231 Conn. 905 (1994). Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings; Colsonv. Smith, 438 F.2d 1075, 1078 (5th Cir. 1971); and plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. Blackledge v. Allison, 431 U.S. 63, 71,97 S.Ct. 1621 52 L.Ed.2d 136 (1977)." Copas v. Commissioner ofCorrections, 234 Conn. 139, 153 (1995).
In the Strickland case the United States Supreme Court articulated the standard for determining whether a petitioner has been deprived of his, or her, constitutional right to effective assistance of counsel. Under Strickland, the petitioner must establish by a preponderance of the evidence that: (1) defense counsel's performance was not reasonably competent or within the range of competence expected of attorneys with ordinary training and skill in criminal law; and (2) but for counsel's substandard performance, there is a reasonable probability that the result of the proceeding would have been different. Levine v. Manson,195 Conn. 636, 640 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Chairamonte v. Manson, 6 Conn. App. 476, 481 (1986). Connecticut has adopted the Strickland standard.
In Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S.Ct. 366, 370,88 L.Ed.2d 203 (1985), the United States Supreme Court analyzed the second prong of Strickland in relation to a case in which, as here, the petitioner entered a plea of guilty. Hill required the petitioner to demonstrate that he would not have pleaded guilty, and but for the ineffective assistance of counsel he would have insisted upon a trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial. Copasv. Commissioner of Corrections, supra, 234 Conn. 151.
"(A) court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that CT Page 14121 are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v.Washington, supra, 466 U.S. 690.
The Court has carefully considered all of the evidence presented at the habeas trial and has further carefully considered and assessed the credibility of the witnesses who testified at said trial. The Court has also carefully considered the arguments of counsel presented to the Court at the conclusion of the habeas trial.
The Court finds that the petitioner has failed to meet his burden in this matter. The evidence presented at the habeas trial does not substantiate the petitioner's claim that Attorney Carty coerced the petitioner into entering his pleas. The Court finds first that Attorney Carty was a competent and experienced criminal trial attorney. The Court further finds that plea negotiations were conducted by Attorney Carty on behalf of the petitioner at the petitioner's insistence. The Court further finds that the petitioner did not want to proceed to a trial. The Court further finds that the petitioner was well aware of the fact that he faced a "cap" of seventy-five years incarceration at the time of sentencing notwithstanding any expectation or hope on the part of the petitioner or the petitioner's attorney that the Court would impose a total effective sentence of something less than seventy-five years incarceration.
The Court further finds that the petitioner's claims that he was under the influence of PCP at the time of the entry of his pleas and at the time his pleas were canvassed to be totally incredible. This Court does not believe the petitioner's claim that he and some friends were sitting in the lock-up at the New Haven Court indiscernibly smoking PCP immediately preceding the entry of the petitioner's pleas. The Court finds that the petitioner's pleas were knowingly made and were fully and adequately canvassed by the Court. CT Page 14122
For all of the foregoing reasons, the petition for habeas corpus relief is denied.
BY THE COURT
CARROLL, J.