[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In the above-entitled action the petitioner, Daniel Henderson, brings a four count amended habeas corpus petition, dated February 18, 2002, in which he makes the following claims. In count one of his petition, he alleges that his attorneys in a prior unsuccessful habeas trial and his criminal trial counsel all rendered him ineffective assistance due to their failure to challenge the constitutionality of the enhancement of his sentence pursuant to General Statutes Section 53a-40b.[1] More specifically, he alleges that the performance of habeas counsel and trial counsel were deficient because each failed to argue that the statute is void for vagueness and thereby deprived him due process under thefourteenth amendment of the federal constitution.[2] In count two the petitioner further claims that habeas counsel and trial counsel were CT Page 6285 ineffective because they did not challenge the enhancement statute under the federal equal protection clause.[3] In count three the petitioner claims that counsel were ineffective due to their failure to argue that the petitioner's enhanced sentence deprives him of due process of law under Article 1, Section 8 of the Constitution of Connecticut.[4]
Finally, in count four the petitioner alleges that the trial court sentenced him in an illegal manner by failing to consider his Presentence Investigation Report (PSI) as required by General Statutes Section54-91a;[5] by failing to consider the circumstances related to the predicate charges underlying the 53a-40b enhancement; and by failing to articulate its awareness of those circumstances. The petitioner asks this court to find that the trial court violated his rights and to vacate the ten year consecutive sentence enhancement.
In his amended return, dated March 14, 2002, the respondent denies that any of the petitioner's attorneys were ineffective and generally denies the validity of petitioner's claims. The respondent also alleges alternative special defenses.[6] The respondent claims that the petitioner is not entitled to pursue his constitutional claims in this, his second habeas petition, unless he proves that his habeas counsel and trial counsel were all ineffective for not raising such claims. The respondent also claims by way of his first special defense that the petitioner's allegations are procedurally defaulted due to his failure to raise them at trial or on direct appeal. The respondent's alternative special defense is that the current petition "presents the same ground as [the] prior petition previously denied and fails to state new facts or evidence not reasonably available at the time of the prior petition." P.B. Section 23-29(3).
The court, after reviewing the evidence and the applicable law, hereby dismisses the petition for the reasons outlined in this Memorandum of Decision.
 I FACTS
The facts underlying the petitioner's criminal trial, sentencing hearing and first habeas petition are uncontested. The court makes its findings of fact based on those uncontested facts, the evidence offered at the second habeas trial, judicial admissions made by the parties and judicially noticed facts from the petitioner's various court files.
The petitioner is currently serving a prison sentence imposed in Statev. Henderson, CR 93-85061, which originated in Superior Court, G.A. 17, Bristol. In that case he was charged with two counts of larceny in the CT Page 6286 sixth degree and one count of forgery in the second degree in violation of Penal Code Sections 53a-125b and 53a-139, respectively. The petitioner pleaded not guilty, elected a trial by jury, held in front of Kocay, J., and was convicted on all counts. At the trial the state proved that the petitioner, on August 11, 1993, stole $250.00 when he knowingly used a bogus money order in that amount to pay a $170.00 restaurant check and accepted $80.00 in change. The petitioner's trial concluded on December 13, 1994 and his case was continued one day.
On December 14, 1994 the petitioner admitted being a persistent larceny offender as defined in General Statutes Section 53a-40 (e)[7] and admitted being eligible for an enhanced sentence under General Statutes Section 53a-40b because he committed his crime while he was released on bond in two other pending criminal cases. The record is silent regarding the factual allegations in the two pending criminal matters. After the trial judge canvassed the petitioner pursuant to P.B. Section 39-19[8]
et seq., it made a finding that the petitioner's persistent larceny offender and Section 53a-40b pleas were made knowingly, intelligently and voluntarily with full understanding of the possible penalties and with effective assistance of counsel. The court then raised the petitioner's bond, ordered a PSI and continued the case until January 24, 1995 for sentencing.
The Office of Adult Probation prepared the PSI, dated January 24, 1995, even though the petitioner, who had posted the increased bond, failed to appear for his PSI interview. The PSI, which was attached to the petitioner's first PSI from July 12, 1994, was available to Judge Kocay at the petitioner's sentencing hearing.[9] The 1994 PSI was used by Judge Kocay when he sentenced the petitioner to three years in prison following his jury trial conviction for two felonies and one misdemeanor.
On the January 24, 1995 sentencing date the defendant failed to appear in person, but did submit a written statement, delivered to the court by his parents and Elisa Villa, his trial counsel. The petitioner's written statement implied that he did not attend court because he needed drug treatment before going to jail. Villa asked Judge Kocay for a continuance so she could determine her client's whereabouts, but the court denied her request. After hearing argument from trial counsel and the state's attorney, the court made a finding that the petitioner had actual notice of the January 24, 1995 sentencing date and had voluntarily absented himself from the sentencing hearing. The court then heard argument from the attorneys regarding the appropriate sentence it should impose.
The state argued for a severe jail sentence based on the petitioner's extensive criminal record, his illegal conduct during the course of his CT Page 6287 trial, his history of flight from the court's jurisdiction and other information. The state also mentioned the petitioner's 1994 PSI and reminded the court that the three year jail sentence it gave the petitioner after his 1994 conviction did not deter him from committing crimes. Villa, in the petitioner's defense, urged the court to show leniency due to the minor nature of the petitioner's criminal conduct, the non-violent character of his record, his lack of education, his drug dependancy, his medical condition and his family background. After hearing the arguments, the court sentenced the petitioner in absentia to 90 day concurrent sentences on the larceny six counts, five years in prison concurrent on the forgery count and ten years imprisonment consecutive for violation of Section 53a-40b. The total effective sentence was fifteen years in prison. The court did not specifically state its reasons for imposing the enhanced sentence and trial counsel failed to ask it for an articulation.
On February 22, 1995 the petitioner, through counsel, filed a notice of appeal regarding his criminal conviction. The Appellate Court dismissed the petitioner's appeal on April 5, 1995 because his whereabouts were unknown at that time. State v. Henderson, A.C. 14502, (1995), cert. denied, 235 Conn. 901 (1995).
The petitioner and the state reargued the petitioner's sentence in the Sentence Review Division of the Superior Court on May 27, 1997.[10]
After considering the arguments and both the 1994 and 1995 copies of the petitioner's PSI, the Sentence Review Division affirmed the sentence imposed by the trial court. In re Henderson, No. CR93-85061 (July 1, 1997). In so doing, the court said the following. "In imposing sentence . . . the [trial] Court was presented with a person 30 years of age with an extensive criminal record. He had at least 25 prior convictions with a number of other charges pending at the time of trial. The sentence imposed here was at the high end of the spectrum. Considering, however, [petitioner's] character and the need to protect the public interest and deter other people from this type of extended criminal activity, in cannot be found that the sentence is inappropriate."
The petitioner alleged in his first habeas petition, dated November 4, 1996, that Villa performed incompetently because she failed to inform Judge Kocay that the petitioner's alleged drug intoxication during the trial made him mentally incompetent to participate in the proceedings. The petitioner was represented by Attorneys John Williams and Glen Conway. The habeas court, DeMayo, J.T.R., found the first habeas petition lacked merit and dismissed it. Henderson v. Commissioner of Corrections, Docket No. CV97-404350-S (1999), aff'd, 60 Conn. App. 911 (2000).
The petitioner's second habeas trial was held on February 4, 2002. At CT Page 6288 that trial he offered into evidence the January 21, 2002 deposition testimony of Williams, but did not offer any testimony by Villa or Conway. Williams was, at the time of the first habeas trial, a practicing attorney with approximately thirty years of trial and appellate criminal litigation experience. Williams believed that his prospects for success in court were increased by limiting his arguments to whatever appeared to be the strongest issues favoring his clients. He raised the competency issue at the first habeas trial because he viewed it as the petitioner's strongest claim. He failed, however, to attack the constitutionality of Section 53a-40b because it did not occur to him to do so. In hindsight Williams now thinks that he should have challenged the constitutionality of the statute and subjectively concludes that he was constitutionally ineffective due to this failure.
 II LAW
In the first count and third counts of the petition, respectively, the petitioner claims that his first habeas counsel and his criminal trial counsel each failed to represent him properly when each failed to argue that Section 53a-40b is void for vagueness under the fourteenth amendment and the Connecticut Constitution. The petitioner contends that any reasonably competent attorney would have alleged that the statute permits the imposition of an arbitrary sentence enhancement because, unlike certain persistent offender statutes which surround it in the Penal Code, it does not require the trial court to consider guidelines such as the criminal's history, his character or whether the nature and circumstances of the crime support an extended period of incarceration in order to serve the public's best interest. This failure to specify guidelines, the petitioner alleges, deprived him of reasonable notice and opportunity to be heard regarding the factual basis for his enhanced sentence. The petitioner claims that the absence of objective statutory sentencing criteria gives trial courts the unfettered discretion to impose an excessively harsh or irrational sentences. The petitioner argues that the statute permitted Judge Kocay to capriciously add ten years to his underlying criminal sentence of five years in violation of the petitioner s constitutional rights. The petitioner, therefore, asks this court to vacate the ten year sentence enhancement. Similarly, the petitioner alleges in count two that his enhanced sentence violates his federal equal protection rights because Section 53a-40b subjects him to punishment but does not apply to other similarly situated people.
The respondent contends that the petitioner has failed to conjunctively prove that habeas counsel and trial counsel performed deficiently and is now barred from raising his constitutional claims. He also generally CT Page 6289 denies the petitioner's allegations. The respondent further alleges that the petitioner has is not entitled to a review of his claims because he did not prove "cause and prejudice" for his failure to raise his claims at trial or on direct appeal. In the alternative, the respondent argues that the second habeas petition is successive.
The court finds that the petitioner has failed to prove that his habeas counsel and trial counsel were each ineffective by simply failing to raise his constitutional claims. It is therefore unnecessary to directly address the constitutionality of Section 53a-40b. In addition, the petitioner cannot raise his constitutional claims in this, his second habeas petition, because he did not do so at his criminal trial or on direct appeal. The petitioner did not plead or prove that he should not be procedurally defaulted under the "cause and prejudice" and "direct bypass" rules.
Hence, the first three counts of the petition are all dismissed. Finally, the court finds that the petitioner did not offer any evidence that he ever moved the trial court to correct his alleged illegally imposed sentence pursuant to P.B. Section 43-22. Due to this failure of proof, the court also dismisses the fourth count of the petition.
 A INEFFECTIVE ASSISTANCE CLAIM
Since the respondent's ineffective assistance claim is his second such claim
and includes an allegation that Williams and Conway, his first habeas attorneys, performed in a constitutionally defective manner, he can only succeed if he demonstrates that all his lawyers, i.e., both habeas counsel and Villa, his trial counsel, rendered him ineffective assistance. "To succeed in his [second] bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel [were] ineffective, and (2) that his trial counsel was ineffective. . . . Only if the petitioner succeeds in what . . . is a herculean task will he receive [relief]. . . . The second habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement." (Citations omitted; internal quotations marks omitted.) Lozada v. Warden,223 Conn. 834, 842 (1992).
The standard for determining whether an attorney rendered constitutionally effective assistance is well established. "First, the [petitioner] must show that counsel's performance was deficient. . . . CT Page 6290 Second, the [petitioner] must show that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v.Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 5. Ct. 3562, 82 L.Ed.2d 864 (1984). In order to show deficient performance under the first Strickland prong, the petitioner must prove that counsel's performance "fell below an objective standard of reasonableness. . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. . . . The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised. . . . The defendant is also not guaranteed assistance of an attorney who will make no mistakes." Giannotti v. Warden, 26 Conn. App. 125, 130 (Citations omitted; internal quotations marks omitted) (1991).
In order to prove prejudice under the second Strickland prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Goodrum v. Commissioner of Correction, 63 Conn. App. 297,301 (2001). Since the petitioner is required to satisfy both Strickland
prongs in order to succeed, his inability to satisfy either one makes it unnecessary for the court to address the other. "A reviewing court can find against the petitioner on whichever ground is easier." State v.Silva, 65 Conn. App. 234, 259 (2001).
In the present case, the petitioner has failed to prove by a preponderance of the evidence that any of his counsel represented him in a manner that fell below an objective standard of reasonableness. During the trial of the present habeas case the petitioner offered no evidence at all regarding his representation by Conway in the first habeas proceeding. The petitioner's current habeas claim, therefore, must be denied insofar as it focuses on Conway.
The petitioner claims that in the initial habeas trial, Williams was deficient because he failed to challenge the constitutionality of Section53a-40b. He underscores this claim by pointing to Williams' statement that he was ineffective for only recognizing the constitutional issue in hindsight. It is unimportant, however, that Williams now subjectively believes he was deficient because he only perceived the constitutional issue in hindsight. At the time of the first habeas trial Williams decided to pursue the drug intoxication issue because as an experienced lawyer, he thought the prospects of success were greatest if he only presented to Judge DeMayo what counsel saw as the strongest issue. "A fair assessment of an attorney's performance requires that every effort be CT Page 6291 made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.)Minnifield v. Commissioner of Correction, 62 Conn. App. 68, 71-72
(2001). Thus, even though Williams currently second guesses himself about his failure to argue the constitutional claims in addition to or in lieu of the competency claim, there is insufficient credible evidence[11] to overcome the presumption that Williams acted competently and that the habeas trial strategy actually employed was sound.
Furthermore, as previously indicated, counsel is not required argue every conceivable issue or to perform totally mistake free. Giannotti v.Warden, supra, 130. It understandable why Williams did not think about the constitutionality of Section 53a-40b as a viable issue in the first habeas trial. That statute became effective in 1990 pursuant to P.A. 90-213, approximately six years before the petitioner's first habeas petition dated November 4, 1996. At the time of the first habeas trial only a small number of people had been sentenced under the statute[12]
and there were no Connecticut cases interpreting it. Now, close to twelve years after the statute became law, there is only one case construing it. That case, State v. Sanko, 62 Conn. App. 34 (2001), decided about two years after the petitioner's first habeas case was decided, did not interpret the constitutionality of the statute in a way which is relevant to the disposition of the present case.
In addition, it is a well settled that a sentencing court has broad discretion in imposing any sentence within the statutory limits, Statev. Huey, 199 Conn. 121 (1986), and that every statute is presumptively constitutional unless proven otherwise beyond a reasonable doubt by the party who challenges it. State v. Jason B., 248 Conn. 543, 556 (1999). Judge Kocay clearly sentenced the petitioner to an enhanced sentence within the parameters of Section 53a-40b. Given the absence of appellate decisions regarding the statute, the broad sentencing discretion of the trial court, the fact that the trial court sentenced the petitioner within the boundaries of the statute and the presumptive constitutionality of Section 53a-40b, this court cannot say that Williams was deficient in failing to pursue the constitutional validity of Section53a-40b as an issue in the first habeas case. The petitioner has failed CT Page 6292 to prove his case against habeas counsel under the first prong ofStrickland.
This court is also unable to find that Villa performed deficiently as trial counsel. Villa offered many favorable arguments on behalf of the petitioner, i.e., the minor nature of the crime for which he was convicted, his nonviolent record, his desire for drug treatment and his family background. Further, the same reasons which make it understandable why Williams did not think about a constitutional challenge to Section53a-40b also explain why Villa did not raise the issue in front of Judge Kocay. The petitioner has failed to prove his claim of deficient performance against trial counsel under the first Strickland criterion.
The petitioner's failure to prove that any of his attorneys performed deficiently makes it is unnecessary for this court to reach the issue of prejudice. State v. Silva, supra. The petitioner is therefore unable to show that any of his attorneys were ineffective and his habeas claim against his first habeas attorneys must fail. Lozada v. Warden, supra. The first three counts of the petition claiming that counsel were ineffective due to their failure to raise the petitioner's constitutional claims are dismissed.
An alternate and equally compelling reason for dismissing the first three counts of the petition is because the petitioner has failed to satisfy either the cause and prejudice standard or the deliberate bypass standard for overcoming procedurally defaulted claims.
 B CAUSE AND PREJUDICE
The respondent's federal and state constitutional claims could have been raised at his criminal trial or on direct appeal. See Copeland v.Warden, 225 Conn. 46, 47 n. 2 (1993). The interests of justice, trial and appellate procedure generally require that constitutional claims be raised first either at trial or on direct appeal. See Johnson v. Commissioner ofCorrection, 218 Conn. 403 (1991); Jackson v. Commissioner of Correction,227 Conn. 124 (1993). When a habeas petitioner wants to assert a constitutional claim that should have been first pursued at trial or on direct appeal, he "must meet the `cause and prejudice' standard ofWainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for determining the reviewability of [such] claims Unless the petitioner[s] can satisfy that standard, [he is] not entitled to review of [his] claims on the merits." (Citations omitted; internal quotation marks omitted.) Milner v. Commissioner of Correction, 63 Conn. App. 726, 731,779 A.2d 156 (2001). In order to satisfy the cause and prejudice CT Page 6293 standard, the petitioner "must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance. . . . Therefore, attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of [trial and] appellate procedure." (Citations omitted; internal quotation marks omitted.) Cobham v. Commr.of Correction, 258 Conn. 30, 40 (2001).
In the present case, the petitioner admittedly did not raise his constitutional claims either at trial or on direct appeal. Further, the failure to raise those claims was not a result of ineffective assistance by any of the attorneys who acted as habeas counsel or trial counsel. Hence, the petitioner must demonstrate good cause and actual prejudice from the alleged impropriety of failing to raise the constitutional claims. This court assumes that the petitioner was actually prejudiced due to counsel's failure to challenge the constitutionality of Section53a-40b. He still, however, has not proven good cause for not asserting his claims at trial or on direct appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Johnson v. Commissioner, 218 Conn., supra, 422 (1991). Thus, the failure of Williams, Conway and Villa to raise the constitutional claims based on tactical considerations, inadvertence or ignorance does not constitute good cause to avoid the procedural default. Apart from his claim of ineffective assistance, which this court rejects, the petitioner has offered absolutely no evidence of good cause, nor does the court discern any. The petitioner has simply failed to meet his burden of proving the good cause element.
Even if this court applies the "deliberate bypass" standard for overcoming procedural defaults instead of the cause and prejudice standard, the first three counts of the petition must still be dismissed.
 C DELIBERATE BYPASS
The more restrictive cause and prejudice standard for overcoming procedural defaults was adopted in lieu of the less restrictive "deliberate bypass" standard. Johnson v. Commissioner of Correction, supra. The Johnson Court, however, did indicate that "[i]n those rare instances in which a deliberate bypass is found, of course, habeas review CT Page 6294 would be barred for that reason alone, apart from the cause and prejudice standard." Id., 417. In order to satisfy the deliberate bypass standard "[a] petitioner seeking a writ of habeas corpus by asserting a claim not raised [at trial or] on direct appeal has the burden of alleging and proving by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure [of trial or] of a direct appeal." Giannotti v. Warden, 26 Conn. App., supra, 128 (citations omitted; internal quotation marks omitted). Under the deliberate bypass rule "the petitioner is entitled to review of constitutional claims not raised . . . if he establishes that the failure to raise the claim did not result from a knowing and voluntary waiver of the right to pursue the claim or if the decision not to raise the claim was made by counsel after conferring with the petitioner." Parker v.Commissioner of Correction, 27 Conn. App. 675, 688, n. 8 (1992). The deliberate bypass rule requires "an intentional relinquishment or abandonment of a known right or privilege by the petitioner personally and depended on his considered choice . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief."Jackson v. Commissioner of Correction, 227 Conn., supra, 131.
The petitioner in the present case did not either plead or prove that he did not deliberately bypass his right to challenge the constitutionality of Section 53a-40b at trial or on direct appeal. He in fact knowingly abandoned that right. At the January 24, 1995 sentencing hearing Judge Kocay made a specific finding that the petitioner had actual notice of the sentencing date and voluntarily absented himself from the proceeding. The petitioner's failure to appear at sentencing in violation of his bail bond constituted a voluntary waiver of his right to challenge the constitutionality of Section 53a-40b at that hearing. "Waiver of the right to be present need not be express, but rather may be inferred from the totality of the [petitioner's] acts and conduct. . . . Conduct held to imply waiver includes . . . jumping bail . . . and deliberate absence from a sentencing hearing." Tyler v. Bronson,12 Conn. App. 621, 622, 533 A.2d 570 (1987), cert. denied, 207 Conn. 802,540 A.2d 75 (1988) (citations omitted; internal quotation marks omitted).
Further, the petitioner knowingly relinquished his right to appeal his constitutional claims by remaining an absconder at the time his attorney filed his appeal. In Tyler v. Bronson, supra, 624-625, the court said that "a criminal defendant's flight from custody brings with it special rules of forfeiture with respect to pending appellate proceedings. . . . [A]n appellate court may refuse to hear a pending criminal appeal where the defendant has escaped from custody or refused to surrender himself without the necessity of engaging in traditional constitutional waiver analysis. The reason for this rule is that the defendant's abandonment of CT Page 6295 the orderly process of judicial administration under these circumstances justifies the conclusion that a forfeiture has occurred."
There is no evidence that the petitioner surrendered to the proper authorities before the state's motion to dismiss his appeal was granted by the Appellate Court on April 5, 1995. State v. Henderson, A.C. 14508, supra. Further, it is undisputed that the reason the appeal was dismissed is because the petitioner's whereabouts were unknown to the court system at the time of the dismissal.
The petitioner has failed to plead or prove that he did not deliberately bypass his opportunities to raise his constitutional claims at trial or on direct appeal. To the contrary, the evidence shows that the petitioner made a personal, considered choice to absent himself from the jurisdiction of the trial court and the Appellate Court. He therefore deliberately bypassed his right to raise his constitutional claims at trial and on appeal and is barred from doing so now in his petition for habeas corpus. The first three counts of the petition are dismissed.
 D ABSENCE OF P.B. SECTION 43-22 MOTION OR DIRECT APPEAL
In the fourth count of the habeas petition, the petitioner alleges that there is no evidence that Judge Kocay reviewed his PSI prior the imposition of sentence as required by General Statutes Section 54-91 a; that the court did not consider the factual circumstances underlying the predicate charges for the Section 53a-40b sentence enhancement; and that the court failed to articulate its reasons for the sentence enhancement. In short, the petitioner claims that Judge Kocay imposed the sentence enhancement in an illegal manner.
The petitioner is not entitled to habeas review of the claims in the fourth count of his petition because he has not satisfied the condition precedent to challenging an illegally imposed sentence in a habeas corpus petition, i.e., the petitioner did not first move the trial court to correct such sentence pursuant to P.B. Section 43-22 or do so on direct appeal. See Cobham v. Commissioner of Corrections, supra. In that case, the court said that "in order to challenge an illegal sentence, a defendant either must appeal the sentence directly or file a motion to correct the sentence pursuant to [section] 43-22 with the trial court before raising a challenge for the first time in a petition for a writ of habeas corpus." Id., 39. Practice Book Section 43-22, in relevant part, says that "[t]he judicial authority may at any time . . . correct a sentence imposed in an illegal manner. . . ." There is no evidence that CT Page 6296 the petitioner ever filed a P.B. Section 43-22 motion. Further, it is undisputed that the petitioner forfeited his direct appeal right to challenge the sentence enhancement. Since the petitioner never moved in the trial court for a correction of the alleged illegally imposed sentence and never directly appealed it, he does not qualify for habeas review of his claims on the merits. The fourth count of the petition is dismissed.
Apart from the petitioner's failure to file a Section 43-22 motion or to take a direct appeal, the court will address additional reasons why the fourth count of the petition should be dismissed.
The law presumes that courts perform their judicial duties and acts in a manner in which they are regularly required to be performed unless there is a showing to the contrary. See Rosenblit v. Danaher, 206 Conn. 125
(1988). The petitioner has not affirmatively proven that Judge Kocay failed to review his PSI or was unaware of the state's claims regarding the offenses for which the petitioner was released on bond.[13] Nor has the petitioner affirmatively proven that the trial court failed to consider the PSI insofar as it concerns his overall sentence. This court, therefore, presumes that the trial court acted as it was required to by Section 54-91a and imposed the petitioner's sentence in a legal manner.
Even in the absence of the aforementioned presumption, the evidence affirmatively show that the trial court did have access to the petitioner's 1995 PSI, that the 1994 PSI was mentioned by the state's attorney during the sentencing hearing and that the court was familiar with the petitioner because it sentenced him pursuant to the 1994 PSI five months prior to the January 24, 1995 sentencing. It is therefore abundantly clear that Judge Kocay knew everything he needed to know in order to properly sentence the petitioner.
This court also notes that any defects regarding the manner in which the sentence enhancement was imposed were cured when the petitioner reargued his sentence in the Sentence Review Division. That court clearly reviewed the petitioner's PSI reports and articulated its reasons for leaving the entire sentence, including the enhancement, undisturbed. Inre Henderson, supra.
 III CONCLUSION
The petitioner has failed to prove that either of his habeas counsel or his trial counsel rendered him ineffective assistance. He has also failed CT Page 6297 to satisfy the standards which would allow him a review on the merits of his procedurally defaulted constitutional claims. Finally, the petitioner is not entitled to a review of his claim that his sentence was imposed in an illegal manner because he did not move the trial court for a correction of the sentence or directly appeal the sentence.
Since the petitioner was not rendered ineffective assistance of counsel, is procedurally defaulted from pursuing his constitutional claims and does not qualify for habeas corpus review of his sentence, the petition is dismissed in its entirety.
 ___________________ White, J.